## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 13-10-GF-BMM |
| Plaintiff/Respondent, | |
| vs. | ORDER GRANTING § 2255 MOTION AND SETTING RE-SENTENCING |
| ONEY JOSEPH BAKER, | |
| Defendant/Movant. | |

This matter comes before the Court on Defendant/Movant Baker's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He seeks relief under *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015).

## I. Background

The Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), mandates a fifteen-year minimum sentence and authorizes a maximum sentence of life in prison if a defendant convicted of being a felon in possession of a firearm has three previous convictions for a serious drug offense or a violent felony. If the defendant does not have three qualifying convictions, the ACCA does not apply, and the defendant faces a maximum sentence of ten years in prison. *See* 18 U.S.C. § 924(a)(2).

A grand jury indicted Baker on February 6, 2013, on one count of interfering with commerce by threats or violence in violation of 18 U.S.C. § 1951(a) (Count

1); one count of possessing and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and (ii) (Count 2); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3).

The parties reached a plea agreement. As relevant here, Baker agreed to plead guilty to Count 3, being a felon in possession of a firearm. The United States agreed to dismiss Counts 1 and 2 and to seek a three-level reduction in Baker's offense level for his acceptance of responsibility. Plea Agreement (Doc. 24) at 2-3 ¶ 2, 7 ¶ 6. Baker specifically admitted he had "three or more previous convictions for a violent felony or a serious drug offense and qualifies as an Armed Career Criminal under 18 U.S.C. § 924(e)." *Id.* at 3-4 ¶ 4. Baker entered a guilty plea to Count 3 on May 16, 2013. Minutes (Doc. 25).

A presentence report was prepared. Baker's base offense level under U.S.S.G. § 2K2.1(a)(2) was 24. He received an upward adjustment for obstruction of justice, Presentence Report ¶¶ 18, 25, and a seven-level increase due to the operation of the Guidelines' armed career criminal provision, U.S.S.G. § 4B1.4. He received a three-level reduction for acceptance of responsibility. His total offense level of 30. His criminal history category was VI. His advisory guideline range was 180 to 210 months. The Court sentenced Baker to serve 210 months in prison, to be followed by a five-year term of supervised release. Minutes (Doc.

30); Judgment (Doc. 31) at 2-3. Baker did not appeal. His conviction became final on August 30, 2013.

On June 26, 2015, the United States Supreme Court held that a certain phrase in the Armed Career Criminal Act was so vague that "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551, 2557 (2015). Baker timely filed his § 2255 motion on June 2, 2016, in which he claimed an entitlement to relief under the Court's decision in *Johnson. See Welch v. United States*, __ U.S. __, 136 S. Ct. 1257, 1265 (2016) (making *Johnson* retroactively applicable to cases on collateral review); 28 U.S.C. § 2255(f)(3).

## II. Motion to Dismiss

The United States seeks to dismiss Baker's motion as untimely and for lack of jurisdiction. *See* Answer (Doc. 36) at 1-3, 12. An untimely claim does not deprive the Court of jurisdiction. *See, e.g.*, *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928 (2013). Further, a *Johnson* claim, regardless of its merits, proves timely if filed within one year of *Johnson. See* 28 U.S.C. § 2255(f)(3); *Dodd v. United States*, 545 U.S. 353, 357 (2005). Baker timely filed his motion. The motion to dismiss is denied.

## III. Analysis

The ACCA applies to defendants who have "three previous convictions by

any court . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). Baker concedes that his previous drug offense qualifies as a serious drug conviction. Two more convictions, both incurred under Montana law, remain at issue in the § 2255 motion: one for robbery in violation of Mont. Code Ann. § 45-5-401 (2005), and one for assault with a weapon in violation of Mont. Code Ann. § 45-5-213(1) (2005). *See* Presentence Report ¶¶ 27, 54-55. The ACCA does not apply to Baker if either of those convictions fails to qualify as a violent felony.

### A. "Violent Felony"

After *Johnson*, the ACCA, in effect, defines a "violent felony" as a felony that:

(i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)    is burglary, arson, or extortion, [or] involves use of explosives[.]

18 U.S.C. § 924(e)(2)(B). Baker's sentence under the ACCA remains proper if each of his Montana convictions meets the elements of the "force clause" in § 924(e)(2)(B)(i), or is equivalent to one or more of the "listed offenses" in (B)(ii). The parties agree that both robbery and assault with a weapon fail to meet the elements of any of the offenses listed in subsection (ii). Only the force clause remains at issue here.

4

## 1. Categorical Comparison of State Elements to Federal Elements

To apply the ACCA, federal sentencing courts must consider convictions entered in more than 50 jurisdictions, containing widely varying elements, to determine whether an individual defendant's criminal history meets the ACCA's terms. The Supreme Court has applied the "categorical analysis" to decide the issue. The "categorical" method focuses exclusively on the elements of a predicate conviction, as defined by the jurisdiction of conviction, and compares those element to the elements of the ACCA, as defined by federal law. *See Taylor v. United States*, 495 U.S. 575, 590-92 (1990). The facts of Baker's convictions for robbery and for assault with a weapon prove "quite irrelevant." *Moncrieffe v. Holder*, __ U.S. __, 133 S. Ct. 1678, 1684 (2013) (internal quotation marks omitted).

In comparing Baker's prior convictions with the ACCA elements, the Court may consider only "what the state conviction necessarily involved," as if every conviction "'rested upon nothing more than the least of the acts' criminalized" by the state statute. *Id.* (quoting *Johnson I*, 559 U.S. at 137). The federal elements must be met in every realistic instance of conviction under the state statute. For this reason, case law applying the state statute to specific acts or defining the issues a jury must decide can be useful in determining whether the state statute meets the elements of the federal definition of a "violent felony." *See, e.g., Gonzales v.*

*Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006).

Regardless of the label that the state uses to describe the elements of a predicate conviction, a federal court must consider whether the full range of conduct captured by the state's elements falls within the range of conduct captured by the federal elements. The state statute need not expressly contain use of force as an element, so long as a conviction under the state statute necessarily will include proof beyond reasonable doubt that the defendant used or attempted to threaten to use physical force against the person of another.

Conversely, even if the state statute expressly has "use of physical force" as an element, it will not meet the requirements of the ACCA's force clause if the state defines "physical force" in the common-law sense that includes "even the slightest offensive touching." *See Johnson I*, 559 U.S. at 138-42; *see also, e.g.*, *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1087-89 (9th Cir. 2015) (holding that New Jersey's definition of "attempt" encompasses more conduct than federal "attempt," so that conviction for attempted aggravated assault failed to qualify as a "crime of violence" under commentary to U.S.S.G. § 2L1.2); *Ortega-Mendez*, 450 F.3d at 1016-18; *United States v. Bonat*, 106 F.3d 1472, 1475-76 (9th Cir. 1997).

### 2.  The Force Clause of the ACCA

The "force clause" provides that an offense qualifies as a violent felony if it

"has as an element the use, attempted use, or threatened use of physical against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has emphasized that a state offense meets the federal force clause only if state law requires the state to prove beyond reasonable doubt that the defendant "used" or attempted or threatened to "use" force "against" another. *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (interpreting 18 U.S.C. § 16(a)); *see also Johnson v. United States* ("*Johnson I*"), 559 U.S. 133, 140 (2010) (applying reasoning of *Leocal* to force clause of ACCA).

As the *Leocal* Court explained, "in its context and in light of the terms surrounding it," the "critical aspect" of the force clause is that the State must prove the defendant actively employed physical force "*against the person . . . of another.*" *Leocal*, 543 U.S. at 9 (emphasis in original). "[W]e would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him." *Id.* Thus, a "use . . . of physical force against the person" of another requires "active employment" of force and "a higher degree of intent than negligent or merely accidental conduct." *Id.* (citing *Bailey v. United States*, 516 U.S. 137, 145 (1995)).

After *Leocal*, it is clear that federal definitions of violent felonies or crimes of violence "cover[] only those crimes involving intentional conduct.," *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1123 (9th Cir. 2006) (en banc). Intentional

conduct involves a volitional use, or attempted or threatened, use of physical force *against* another. *See United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th Cir. 2001), *cited with approval in Leocal*, 543 U.S. at 9. Federal courts turn to the Model Penal Code" as a source of guidance . . . to illuminate the meaning of and distinctions between intent requirements." *See Trinidad-Aquino*, 259 F.3d at 1145 (internal quotation marks and citations omitted).

Like the meaning of "use" and "physical force," the meaning of the phrase "threatened use of physical force" in 18 U.S.C. § 924(e)(2)(B)(i), presents a question of federal law rather than state law. *Leocal*, 543 U.S. at 8-9; *Johnson I*, 559 U.S. at 138. A "threatened use of physical force" might be interpreted in a targeted sense, that is, a "communicated intent to inflict harm or loss on another." *See, e.g.*, Black's Law Dict. 1489 (7th ed. 1999). This threat may come with, or without, intent to cause actual harm or loss. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.3(b) at 569 (2d ed. 2003).

Alternatively, a "threatened use of force" might be taken in a more diffuse sense to indicate a substantial risk that harm or injury will occur, without a targeted threat. For instance, federal courts have determined that mere touching of another constitutes a "threatened use of force" when the touching takes place with a deadly weapon. *See United States v. Grajeda*, 581 F.3d 1186, 1191-92 (9th Cir. 2009); *see also United States v. Dominguez*, 479 F.3d 345, 349 (5th Cir. 2007); *United States*

*v. Treto-Martinez*, 421 F.3d 1156, 1160 (10th Cir. 2005) (both noting that touching with a deadly weapon "could always lead to more substantial and violent contact").

Courts have undertaken an effort to integrate the concept of a "threatened use of force" with the Model Penal Code's definitions of purposeful, knowing, or reckless intent, *see* Model Penal Code § 2.02(2)(a)-(c). An offense contains a "threatened use of physical force against the person of another" as an element when the state is required to prove beyond reasonable doubt one of the following:

1.  The defendant meant to cause another to apprehend the use of physical force, or was aware it was practically certain he would cause such apprehension, or at least knew of and consciously disregarded a substantial risk he would cause it; or

2.  The defendant's conduct created a substantial risk that physical force would be used and the defendant meant to create that risk, or was aware creation of the risk was practically certain, or at least knew of and consciously disregarded the risk.

If the level of intent that was required to prove the state offense could fail to meet the level of intent required by federal law to constitute a "threatened use of force," then the state offense cannot be classified as "violent felony" under the force clause. The Ninth Circuit in *United States v. Castillo-Marin*, 684 F.3d 914,

923-24 (9th Cir. 2012), held that first-degree assault under New York law fails to qualify as a crime of violence under the force clause of U.S.S.G. § 2L1.2(b)(1)(A)(ii), because its intent element reaches more conduct than federal intent element. By contrast, the Ninth Circuit in *United States v. Lawrence*, 627 F.3d 1281, 1287-88 (9th Cir. 2010), determined that second-degree assault under Washington law meets intent element of the ACCA's force clause. *See also Grajeda*, 581 F.3d at 1192-97 (analyzing nature of intent required to constitute assault under California law).

### B. Assault with a Weapon

Montana defines the relevant offense of assault with a weapon as follows:

(1)  A person commits the offense of assault with a weapon if the person purposely or knowingly causes:

  (a)  bodily injury to another with a weapon; or

  (b)  reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon.

Mont. Code Ann. § 45-5-213(1) (2005).

Baker attached documents to his reply brief to suggest that he was convicted under subsection (b) of the statute. *See* Plea Agreement at 1 (Doc. 41-1 at 5) (citing Cause No. BDC-06-115 and Mont. Code Ann. § 45-5-213(1)(b)); Presentence Report ¶ 55; *Shepard v. United States*, 544 U.S. 13, 16 (2005), *clarified by Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243, 2256-57 (2016).

The following analysis concerns only the "reasonable apprehension" element contained in subsection (b) of the statute.

The statute's "knowingly" element requires the state to prove that the defendant is at least "'aware that harm is practically certain'" to follow from his conduct. *See Voisine*, 136 S. Ct. at 2278 (quoting Model Penal Code § 2.02(2)(b)). It also appears to require the state to prove that the defendant knowingly caused another person to experience reasonable apprehension of serious bodily injury. *See, e.g.*, Mont. Code Ann. § 45-2-103(4).

Case law interpreting the statute proves illuminating. Montana eschews the "result-oriented" definition of knowingly but the "conduct-oriented" definition. The Montana statute's intent element is met if the defendant is aware of his conduct, regardless of whether he is aware that harm may follow. A threat communicated as an intent to cause harm is not a required element that the jury must find. A defendant's awareness of his conduct differs from a purposeful, knowing, or reckless intent to cause another to apprehend injury. The following cases confirm that the reasonable-apprehension portion of Montana's assault with a weapon statute does not meet the force clause of the ACCA.

## 1. *State v. Misner* **and** *State v. Hagberg*

The defendant in *State v. Misner*, 763 P.2d 23 (Mont. 1988), engaged in several verbal altercations with an employee of a welfare office. Misner left the

welfare office after one such altercation. The secretary at the welfare office saw Misner retrieve a rifle from his truck and begin shaking the rifle and screaming in the direction of the welfare office. The secretary screamed, "Oh my god, he's got a gun." *Misner*, 763 P.2d at 24. The welfare office employee did not "see" the gun as he was working in the back of the office at the time. The employee unequivocally testified nevertheless to his apprehension of serious bodily injury. *Id.* at 25. The court affirmed Misner's conviction for felony assault under Mont. Code Ann. § 45-5-202.

The defendant in *State v. Hagberg*, 920 P.2d 86 (Mont. 1996), also faced felony assault charge. A police officer testified that he had observed an apparently drunken male passenger lean over with his arms between his legs as if hiding something during a traffic stop. *Hagberg*, 920 P.2d at 88. The police officer further testified that he saw an empty holster on the seat between the driver and the passenger. *Id.* The officer testified that these facts, along with the passenger smelling of alcohol and sounding belligerent, led him to apprehend serious bodily injury. The court affirmed Hagberg's conviction on the grounds that it was not necessary for the officer to have observed personally the gun in order for the officer to have experienced reasonable apprehension of bodily harm as required by the statute. *Id.* at 90. The state simply had to establish that the officer had reason to be apprehensive of serious bodily injury by a weapon.

## 2. *State v. Smith*

The court in *State v. Smith*, 95 P.3d 137 (Mont. 2004), addressed the issue of whether a defendant could commit assault with a weapon while talking on the phone with his ex-wife. Smith threatened to kill the ex-wife's new boyfriend during the conversation and made a metallic clicking sound like a gun being cocked. *Smith*, 95 P.3d at 138. The trial court denied Smith's motion to dismiss on the basis that the statute is "designed to punish, to criminalize, the use or threatened use of a weapon, and that's what occurred here." Id. at 139. Smith appealed.

Smith argued, in part, that the affidavit in support of the felony assault charge failed to state the required elements to establish the offense. Smith alleged that the victim had to "see" the weapon or reasonably believe that there is "a weapon being utilized by the perpetrator. " *Id.* at 141. The court recognized that its case law permits two different applications of the statute.

The first application occurs when a person uses a weapon, or what reasonably appears to be a weapon, to cause reasonable apprehension of serious bodily injury in the victim. *Id.* A person violates the statute under the second application "when he *simply causes* reasonable apprehension that the victim will sustain serious bodily injury from a weapon, if it reasonably appears to the victim that a weapon is involved, whether actually seen or not." *Id.* (emphasis in original).

The court suggested that its holdings in *Mizner* and *Hagberg* stand for the proposition that the second application supports a scenario in which the statute may be satisfied by "the mere existence of circumstances which lead the victim to reasonably apprehend that he or she will be injured by a weapon." *Id.*, citing *Misner*, 763 P.3d at 26; *Hagberg*, 920 P.2d at 90. In fact, that court described *Hagberg* as demonstrating that "it is not technically correct that 'use of a weapon' (or, presumably, what appears to the victim to be a weapon) is a requisite element of the offense" of felony assault or assault with a weapon. *Smith*, 95 P.3d at 143.

The court agreed that the second application of the "reasonable apprehension" portion of Montana's assault with a weapon statute does not require the State to prove actual "use" of a weapon. It focuses on what the defendant "simply causes" rather than what the defendant "knowingly causes." The court ultimately concluded that Smith had not committed assault with a weapon, however, due to the fact that the statute did not apply where one person (the ex-wife) reasonably apprehended serious bodily injury to a third party (her boyfriend). *Id.*, at 143-44.

### 3. *State v. Martin*

The defendant in *State v. Martin*, 23 P.3d 216, 223 (Mont. 2001), appealed his conviction for felony assault on the basis that "the State did not establish that he purposely or knowingly intended to create an apprehension of serious bodily

injury." The felony assault charge arose from Martin's conduct while he was running away from officers. An officer testified that he chased Martin into and alley where Martin entered a small enclosure boarded up with plywood. *Martin*, 23 P.3d at 223. The officer testified that he saw Martin look "directly at me, and [Martin's] gun turned and pointed directly at me." I*d*. at 223-224. Martin testified "that he did not intend to make [the officer] think he was going to shoot." *Id.* at 224.

The court discussed the distinction in Montana law between the defendant's awareness of his actions, on the one hand, and the element of causing reasonable apprehension of injury, on the other hand. The court separated the notion of causation from the defendant's acting knowingly. *Id.* at 224. The court recognized that the defendant's actions control the "knowingly" or "purposely" element of felony assault. *Id.* On the other hand, the victim's mental state determines whether the defendant's actions caused reasonable apprehension of serious bodily injury in another. *Id.* The court determined that the officer's awareness of Martin's earlier shooting of another officer and Martin's flight, and the way that Martin pointed the gun at the officer, provided sufficient evidence for the jury to find that the officer felt reasonable apprehension of serious bodily injury. *Id.*

### 4. *State v. Birthmark*

Finally the Montana Supreme Court in *State v. Birthmark*, 300 P.3d 1140

(Mont. 2013), laid to rest any doubt as to the applicable law regarding the mental state required for a felony assault conviction. The state charged Birthmark with partner or family member assault ("PFMA"). The statute required the state to prove that Birthmark "purposely or knowingly cause[d] reasonable apprehension of bodily injury in a partner or family member." *See* Mont. Code Ann. § 45-5-206(1)(c). Unlike the felony assault statute, the PFMA statute requires the state to show reasonable apprehension of bodily injury, as opposed to serious bodily injury. Both statutes share the intent element. The defendant must purposely or knowingly cause the victim reasonable apprehension of injury.

Birthmark testified at trial that he had been "jumped" by people at a party that he had left just before arriving at his mother's house. He claimed to have been "concerned for his sister who was at the party." *Birthmark*, 300 P.3d at 1141. At his mother's house, Birthmark stared at this mother and brother, used loud language, picked up a large stick, talked about finding a knife, and threatened to "bash their heads in and slit their throats." *Id.* at 1143. He explained, however, that "his anger displayed at his mother's house was not directed at his mother and brother but was directed toward the people at the party." *Id.* He suggested that his mother and brother "inferred . . . or assumed" that his threats were directed at them. *Id.*

The court instructed the jury that a person acts knowingly if he is "aware of

his or her conduct." *Id.* at 1143. Birthmark argued on appeal that the trial court instead should have instructed the jury on the "result-based" definition of knowingly. This instruction would have require the state to prove that Birthmark was aware of a high probability that his actions would cause his mother and brother reasonable apprehension of bodily injury. *Id.*; Mont. Code Ann. § 45-2-101(35) (second sentence).

The court acknowledged that Birthmark wanted the jury to consider that "he did not intend [his] actions to cause his brother and mother to have a reasonable apprehension of bodily injury." *Id.* at 1143. The court noted, however, that Birthmark "did not materially contest his actions at his mother's house." The court further reasoned that Birthmark would not have been entitled to a "result-oriented" instruction even if his counsel had requested it. *Id.* at 1144.

The court emphasized, with regard to the second element, that the PFMA statute relies on an objective standard that asks whether a reasonable person under similar circumstances would have reasonably apprehended bodily injury. The court noted the "well established" state of the law under the "reasonable apprehension" prong with its focus on the reasonable apprehension of the victim based on an objective standard rather than any intent by the defendant. *Id.* at 1143 citations omitted). The objective standard asks whether "a reasonable person under similar circumstances would have reasonably apprehended bodily injury." *Id.*, quoting

*State v. Finley*, 252 P.3d 199 (Mont. 2011).

### 5.  Conclusion

These cases make clear that a defendant can be convicted of assault with a weapon under Montana law if his conduct "simply causes reasonable apprehension of serious bodily injury." *Smith*, 95 P.3d at 142. Nothing requires the jury to find that he meant to cause such apprehension, was aware of a high probability he would cause it, or consciously disregarded a substantial risk he would cause it.

The defendant's "subjective intent" plays no role in a reasonable-apprehension assault. As a result, the State need not prove, as an element, the use, attempted use, or threatened use, of physical force against the person of another to the standards of federal sentencing law.  Categorically, a conviction under Mont. Code Ann. § 45-5-213(1)(b) (2005), fails to qualify as a violent felony under the force clause of the federal act, 18 U.S.C. § 924(e)(2)(B)(i).

### C.  The Armed Career Criminal Act Does Not Apply to Baker

The residual clause applied to convictions for offenses "involv[ing] conduct that presents a serious potential risk of physical injury to another." A reasonable jurist could have thought before *Johnson* that a reasonable-apprehension assault with a weapon fit that description. The Court no longer can rely on the residual clause. Montana's assault with a weapon statute meets neither the federal elements of the force clause, 18 U.S.C. § 924(e)(2)(B)(i), nor the elements of any offense

listed in (B)(ii). Baker's conviction for assault with a weapon fails to qualify as a "violent felony."

Baker's motion under 28 U.S.C. § 2255 must be granted, and he must be re-sentenced. A certificate of appealability need not be considered because this decision is not adverse to Baker. *See* Rule 11(a), Rules Governing § 2255 Proceedings. This decision means only that Baker may not be subject to sentencing as an armed career criminal and is subject to a ten-year maximum sentence. His new sentence will be determined by applying 18 U.S.C. § 3553(a), and except as limited by *Peugh v. United States*, __ U.S. __, 133 S. Ct. 2072 (2013), the 2016 Sentencing Guidelines.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Baker's motion to vacate, set aside, or correct his sentence (Doc. 34) is GRANTED.

2. The Judgment entered on August 16, 2013 (Doc. 31), is **VACATED**.

3. Sentencing is set for **September 14, 2017,** at **10:00 .m.** in the Missouri River Courthouse, Great Falls, Montana.

4. The United States Probation Office shall conduct a supplemental presentence investigation and prepare a new presentence report omitting Armed Career Criminal designation. Fed. R. Crim. P. 32(c), (d); 18 U.S.C. § 3552(a).

5. The probation officer shall disclose the completed report, except for

recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before **August 1, 2017.** The probation officer shall not disclose any recommendation made or to be made to the Court.

6. If restitution is mandatory, the probation officer shall discuss a payment plan with Defendant and shall make recommendations to the Court concerning interest and a payment schedule.

7. Counsel shall attempt in good faith to resolve disputes over any material in the presentence report. Unresolved objections to be relied upon at sentencing shall be presented to the probation officer on or before **August 15, 2017.** U.S.S.G. § 6A1.2. **Any unresolved objections are expected to be included in the pre-sentence report, not in a sentencing memorandum.**

8. The presentence report, in final form, including any unresolved objections, shall be delivered to the Court and the parties on or before **August 24, 2017.**

9. Sentencing memoranda and supporting documents addressing all relevant sentencing issues shall be filed on or before **August 31, 2017.** Absent good cause shown, sentencing memoranda and supporting documents filed after **August 31, 2017,** will not be considered in addressing sentencing issues. Failure to timely file sentencing memoranda may result in imposition of sanctions against counsel.

10. Responses to sentencing memoranda shall be filed on or before

**September 7, 2017.**

11.   Reply briefs will not be accepted for filing in sentencing matters.

12.   The Court will resolve objections included in the Addendum to the presentence report at the sentencing hearing in accordance with U.S.S.G. § 6A1.3.

13.   All parties that intend to have witnesses testify at sentencing shall give notice to this Court ten days prior to the sentencing date.

14.   The United States Marshals Service must transport Oney Joseph Baker, BOP # 06039-046, to the District of Montana. Baker must be present in Montana and available to consult with counsel at least 30 days before sentencing.

15.   When an Amended Judgment is entered in the criminal case, the clerk shall enter judgment in the civil action, by separate document, in favor of Baker and against the United States.

DATED this 11th day of May, 2017.

_____
Brian Morris
United States District Court Judge

cc:     USMS
        USPO